UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

USA GATEWAY TRAVEL, INC.,

    Plaintiffs,

  v.

GEL TRAVEL, INC., et al.,

    Defendants.

CASE NO. C06-053JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment from Defendant Dr. Chau-Su Ou (Dkt. # 35), a motion for partial summary judgment from Plaintiff USA Gateway Travel ("Gateway") (Dkt. #37), and a motion for partial summary judgment from Defendants GEL Travel ("GEL") and Ester Chen (Dkt. # 42). The court has heard oral argument in this matter.

For the reasons stated below, the court GRANTS Defendant Dr. Ou's motion (Dkt. # 35) and dismisses all claims against Dr. Ou. The court GRANTS in part and DENIES in part Plaintiff Gateway's motion for partial summary judgment (Dkt. # 37). The court GRANTS in part and DENIES in part the motion for partial summary judgment from Defendants GEL and Ms. Chen (Dkt. # 42).

ORDER – 1

## II.  BACKGROUND

Plaintiff Gateway is an airline ticket wholesaler.  From 1999 until 2004, Defendant GEL, a retail travel agency, purchased airline tickets for its customers through Gateway.  GEL's principal, sole employee, and sole officer is Ester Chen.  In a typical transaction, Ms. Chen would obtain payment for a ticket directly from her customer via check or credit card.  She would provide her customer's payment to the Gateway employee who worked on GEL's account, Jennifer Lin.  Ms. Lin would purchase the ticket directly from the airline and send the ticket and an invoice to GEL.

Dr. Chau-Su Ou is a frequent traveler and long-time customer of GEL.  In the 1990s, Dr. Ou provided Ms. Chen with a BankOne credit card number and its expiration date.  Ou Dep. at 35.  From that time until Fall of 2004, Ms. Chen used this card to pay for Dr. Ou's airline tickets and travel expenses.  Id.

In early 2003, Dr. Ou obtained another credit card, a Citibank Mastercard ("Citibank card").  Id. at 42-43.  According to Dr. Ou, Ms. Chen advised him to obtain the second card as a back-up form of payment and a means to earn mileage benefits.  Id. at 47.  During a brief telephone call around June 2003, Dr. Ou provided Ms. Chen with the Citibank card number, expiration date, and online personal identification number ("PIN").  Id. at 48.  It is uncontested that when Dr. Ou provided Ms. Chen with the Citibank card information, they did not discuss whether or how the second card would be used.  Id. at 52; Chen Dep. at 59.  Shortly thereafter, Ms. Chen contacted Citibank; she changed the street address associated with the card to her home address and established her own password-protected email account.  Chen Dep. at 68, 69, 140, 141.  Dr. Ou was not aware that Ms. Chen established her own access to the account.  Ou Dep. at 55-56.

Ms. Chen then began using Dr. Ou's Citibank card to purchase tickets for other GEL customers.  Chen Dep. at 62-64.  Ms. Chen concedes that she did not have Dr. Ou's

ORDER – 2

authorization to do so.  Chen Dep. 101, 102.  From July 2003 until October 2004, nearly $1,000,000 worth of airline tickets for persons other than Dr. Ou were purchased with his Citibank card.  Wilkinson Decl. at 4-139.  None of those tickets were purchased for Dr. Ou.  Chen Dep. at 62-63.  While Ms. Chen made periodic partial payments on the account, the outstanding balance on Dr. Ou's card reached $280,282.87 in September 2004.  Wilkinson Decl. at 4-139.  Ms. Chen never told Dr. Ou that she was using his Citibank card to purchase tickets for other GEL customers, nor did Dr. Ou receive statements associated with the account.  Chen Decl. at 68.  Chen's practice continued for nearly 18 months unbeknownst to Dr. Ou.

In late 2004, Dr. Ou's banker informed Dr. Ou that he had a large outstanding balance on his Citibank card.  Ou Dep. at 64.  Dr. Ou contacted Citibank, denied the charges, and executed a fraud affidavit attesting that he had not authorized use of the card.  Id. at 66.  When Citibank declined the charges, the airlines issued Gateway "chargeback" notices demanding payment.  Men Decl. ¶ 3.  Gateway paid the airlines a total of $175,757.50 in compensation for the tickets purchased with Dr. Ou's credit card.  Id. ¶ 5.

Gateway alleges negligent maintenance of a personal credit card against Dr. Ou.  Against GEL and Ms. Chen, Gateway alleges fraud, negligent misrepresentation, conversion, unjust enrichment, breach of contract, and a violation of the Consumer Protect Act ("CPA") under RCW § 19.86.  See Compl.

Dr. Ou's motion for summary judgment seeks dismissal of the negligence claim.  Gateway's motion seeks partial summary judgement on its contract, negligent misrepresentation, and unjust enrichment claims.  GEL and Ms. Chen seek partial summary judgment on the fraud and CPA claims.

ORDER – 3

## III.  DISCUSSION

In examining a motion for summary judgment, the court must draw all inferences from the evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, the opposing party must show that there is a genuine issue of fact.  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

**A.  Because Gateway Cannot Establish the Requisite Duty, Dr. Ou Is Entitled to Summary Judgment on the Negligence Claim.**

Gateway contends that Dr. Ou created the necessary conditions for Gateway's loss by providing his Citibank card number, expiration date, and PIN to Ms. Chen and failing to notice that he was not receiving Citibank statements.  In his motion for summary judgment, Dr. Ou argues, inter alia, that he did not owe GEL a duty of care.

In a negligence action, the threshold question is whether the defendant owes a duty of care to the injured plaintiff.  Kelly v. Falin, 896 P.2d 1245, 1247 (Wash. 1995). Gateway is unable to cite any controlling authority for the proposition that a cardholder owes a duty of care to a third party who incurs economic loss from the unauthorized use of a credit card.  Gateway urges the court to recognize a new duty of care.  "The existence of duty is a question of law which is determined by foreseeability and policy

ORDER – 4

considerations." Shepard v. Mielke, 877 P.2d 220, 222 (Wash. Ct. App. 1994). Duty does not extend to unforeseeable risks of harm. See, e.g., Christen v. Lee, 780 P.2d 1307, 1313 (Wash. 1989) (finding that drinking establishment may be liable for criminal assault by patron, but only if such assault is foreseeable based on obvious intoxication and notice of propensity for violence); Mauch v. Kissling, 783 P.2d 601, 606 (Wash. Ct. App. 1989) (holding that scouting organization owed no duty to anticipate potential injury from airline ride furnished to scout); Curran v. Marysville, 766 P.2d 1141, 1145-46 (Wash. Ct. App. 1989) (holding that one who cares for a child has no duty to foresee or guard against an unforeseeable hazard).

The court concludes that Gateway's injury was not foreseeable to Dr. Ou. First, Gateway concedes that it did not have a contractual relationship with Dr. Ou. In fact, Dr. Ou had no knowledge that Ms. Chen purchased his airline tickets through Gateway. In addition, Gateway fails to produce evidence showing that Dr. Ou had reason to anticipate Ms. Chen's misuse of his Citibank card. Since the 1990s, when Dr. Ou provided his BankOne card to Ms. Chen, she used it in the manner authorized by Dr. Ou – to purchase his personal airline tickets or to pay for his personal travel expenses. It is uncontested that Dr. Ou did not authorize Ms. Chen to use his Citibank card to purchase tickets for her other customers. Dr. Ou never received any statements because Ms. Chen redirected them to her personal address.

Moreover, public policy considerations weigh against the imposition of a new duty on a cardholder to an unknown third party who is injured by the unauthorized use of a credit card. Gateway argues that a Second Circuit case, Minskoff v. American Express Travel Related Serv. Co., Inc., 98 F.3d 703, 709 (2d. Cir. 1996), establishes a general common law obligation to examine credit card statements and report forgeries and alterations. Minskoff addresses a cardholder's liability for unauthorized charges under

ORDER – 5

the Truth and Lending Act to an *issuing financial institution*. See id. Minskoff does not address the imposition of a duty to protect *unknown third parties* from unauthorized charges. While the court agrees with Gateway's contention that the law should impose some obligation on a cardholder to take reasonable steps to prevent credit card fraud, the court is not convinced that such an obligation runs to an unknown entity under the circumstances present in this case. To so hold would allow every third party injured by credit card fraud or identity theft to seek to collect its losses from a cardholder under a negligence theory. Such an expansive theory of liability would discourage persons from acquiring credit cards and undermine public policy in favor of encouraging commerce.

For these reasons, the court concludes, as a matter of law, that Dr. Ou owed Gateway no duty of care. The court grants Dr. Ou's motion for summary judgment and dismisses Gateway's claim against Dr. Ou.

**B.     Gateway Is Entitled to Summary Judgment on Its Breach of Contract Claim.**

Gateway moves for summary judgment on its breach of contract claims against Defendants GEL and Ms. Chen. Gateway's breach of contract claim is appropriate for summary disposition because, taking the evidence in a light most favorable to GEL and Ms. Chen, all facts material to the contract claim are either undisputed or admitted.

**1.     Undisputed Evidence Establishes the Existence of a Contract.**

While Gateway and GEL never entered into a written contract, the evidence shows that an agreement existed whereby Gateway provided airline tickets to GEL's customers in exchange for payment. See Chen Dep. at 42. Consistent with this agreement, GEL regularly purchased tickets for its customers through Gateway from 1999 until 2003. Ms. Chen admits that GEL was required to pay for the tickets that Gateway issued on behalf of GEL's customers. Id. Ms. Chen testified that she recognized this agreement to be

ORDER – 6

legally enforceable; she believed she had a right to sue Gateway if it failed to supply the tickets. Id. at 43.

A contract implied in fact may "arise by inference or implication from circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention on the part of the parties to contract with each other." Bell v. Hehewald, 628 P.2d 1305, 1306-07 (Wash. 1981) (internal citation omitted) (holding oral contract between broker and property owner enforceable). The undisputed evidence shows that Gateway and GEL shared a mutual intention to exchange payment for wholesale airline tickets. The parties course of dealing for nearly 10 years – whereby GEL paid Gateway for wholesale airline tickets – evidences a mutual understanding. Indeed, GEL does not contest the existence of a contract. Under these circumstances, where there is clear, cogent evidence of a mutual understanding between GEL and Gateway, the court concludes that a contract implied in fact existed between Gateway and GEL.

**2.   Undisputed Evidence Establishes that Gateway is Entitled to Recover the Price of the Airline Tickets Provided to GEL's Customers.**

Where a contract for the sale of goods or services exists, a seller who provides conforming goods is entitled to recover the agreed purchase price of the goods or services. Syrovy v. Alpine Res., Inc., 859 P.2d 51, 55 (Wash. 1993). Gateway's evidence shows that Gateway performed its responsibilities under the contract by providing GEL's customers with airline tickets. For each transaction for which it claims damages, Gateway submits (a) an invoice showing that Ms. Chen ordered and received an airline ticket; (b) a chargeback notice showing that the charges for the tickets were rejected and the airline demanded payment of Gateway; and (c) proof that Gateway paid the airline in the amount of the chargeback. Lin Decl. at 3-142; Men Decl. at ¶ 6, 4-213.

ORDER – 7

Gateway has also submitted a Fed. R. Evid. 1006 summary that identifies each transaction and the amount of Gateway's loss with annotations to the relevant evidentiary material. See O'Neill Decl. at 3-7. Gateway's proffer demonstrates that Gateway provided $175,757.50 worth of tickets to GEL for the benefit of GEL's customers.

Ms. Chen, who admits the existence of a contract between GEL and Gateway, claims that she can "account for only $47,000 worth of tickets" and "does not believe" that she was responsible for the remaining charges. See Defs.' Opp'n at 9, 13. Aside from her inability to recall specific transactions, Ms. Chen does not submit any evidence to show that she did not purchase or receive the airline tickets at issue from Gateway. When presented with Citibank statements reflecting the charges, Ms. Chen could not identify a single transaction she had not ordered. Chen Dep. at 163. Ms. Chen concedes that she relied on Gateway's invoices for documentation of her purchases and that she did not maintain her own records. Id. at 108. Ms. Chen failed to object to the invoices when she received them from Gateway.[1] Finally, the uncontested evidence shows that Ms. Chen was the only person with access to Dr. Ou's Citibank account and that all of the charges on that account were for airline travel.

Having provided no factual basis for her denials, Ms. Chen's statement that she cannot account for the charges does not create a material issue of fact as to the amount of damages. "Conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment." See Hernandez v. Spacelabs Medical Inc., 343 F.3d 1107, 1112 (9th Cir. 2003) (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

---

[1] Gateway correctly observes that the doctrine of account stated prevents Ms. Chen from now arguing that the services reflected on those statements were not actually rendered. See Sunnyside Valley Irrigation Dist. v. Roza Irrigation Dist., 877 P.2d 1283, 1285 (Wash. 1994) (A "party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent.").

ORDER – 8

The court therefore finds that Gateway is entitled to $175,757.50 in damages for breach of contract.

### 3. Gateway is Entitled to Prejudgment Interest.

A federal court sitting in diversity applies state law to determine the availability of prejudgment interest. James B. Lansing Sound Inc. v. Nat'l Fire Ins. Co., 801 F.2d 1560, 1569 (9th Cir. 1986). Under Washington law, prejudgment interest is available where the amount claimed is "liquidated." Car Wash. Enter., Inc. v. Kampanos, 874 P.2d 868, 875 (Wash. Ct. App. 1994). An amount claimed is liquidated "where the evidence furnishes data, which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." Id.

As demonstrated by Gateway's evidence, the amount of contract damages, $175,757.50, is the sum of all of the payments Gateway made to compensate the airlines for the rejected charges from Dr. Ou's credit card. Because no discretion is required to compute this amount, Gateway is entitled to prejudgment interest.

Prejudgement interest runs from the date the claim arose until judgment is entered. Hansen v. Rothaus, 730 P.2d 662, 665 (Wash. 1986). Prejudgment interest may be awarded in civil litigation at the statutory judgment interest rate, which is 12 percent per annum. See RCW §§ 4.56.110, 19.52.020. The court concludes that Gateway is entitled to prejudgment interest at a rate of 12 percent per annum from June 23, 2005, which is the date that Gateway made its final payment to an airline. See Men Decl. at 207.

### 4. Ms. Chen is Individually Liable on Gateway's Breach of Contract Claim.

Taking the evidence in a light most favorable to Ms. Chen, the court finds that the parties to the contract were Gateway and GEL – as a corporate entity – and not Ms. Chen

ORDER – 9

individually.[2]  Nevertheless, under either rule set forth below, the court may impose personal liability upon Ms. Chen.

As a general rule, a corporation exists as an organization that is distinct from its individual members.  There are circumstances, however, in which the corporate form has been so abused that, in order to further justice, a court will disregard the corporate personality.  Superior Portland Cement, Inc. v. Pacific Coast Cement Co., 205 P.2d 597 (Wash. 1949).  Although the facts vary from case to case, a court may disregard the corporate entity when it is used to perpetuate a fraud or wrong, gain an unjust advantage, or evade an obligation.  Burns v. Norwesco Marine, Inc., 535 P.2d 860, 863 (Wash. Ct. App. 1975) (internal citations omitted).  This frequently occurs under the alter ego theory, when a court may pierce the corporate veil and impose personal liability upon an officer when she has disregarded the corporate entity such that there is a unity of ownership and interest, which causes the separateness of the corporation to cease to exist.  Kueckelhan v. Federal Old Line Ins. Co., 418 P.2d 443, 455 (Wash. 1966); In re Estate of Trierweiler, 486 P.2d 314, 317 (Wash. 1971).

The undisputed facts show that Ms. Chen, the principal, sole employee, and sole officer of GEL, conducted her business as a personal enterprise, particularly regarding her use of the Citibank card to purchase airline tickets.  Ms. Chen redirected the Citibank billing statements to her home address and associated her home telephone number with the account.  Chen Dep. at 68, 69, 140, 141.  She set up password-protected internet access using her own email account.  Id.  In addition, Ms. Chen admits that she uses her

---

[2]The court notes that in making this assumption, it disregards Ms. Chen's counsel's repeated representations that Ms. Chen was a party to the contract.  While a counsel's unequivocal admissions to the court may indeed be binding on a client, U.S. v. Freeman, 519 F.2d 67, 70 (9th Cir. 1975), the court concludes that Ms. Chen is individually liable for reasons independent of her counsel's statements.

ORDER – 10

personal assets to operate GEL. Id. at 164. GEL does not maintain business records of its airline ticket purchases. Id. at 108. These facts demonstrate that Ms. Chen failed to maintain a distinction between her personal affairs and her business, which warrants the imposition of personal liability.

Alternatively personal liability may be imposed on an officer without piercing the corporate veil under the rule enunciated in State v. Ralph Williams' North West Chrysler Plymouth, Inc., 553 P.2d 423, 439 (Wash. 1976). If a corporate officer participates in wrongful conduct, or with knowledge approves of the conduct, then the officer, as well as the corporation, is liable for the penalties. Id.; see also Johnson v. Harrigan-Peach Land Dev. Co., 489 P.2d 923, 928 (Wash. 1971) ("Corporate officers cannot use the corporate form to shield themselves from individual liability.") Ralph Williams' held that a corporate officer could be personally liable for the deceptive practices of his automobile dealership, where he formulated and supervised its activities. Likewise, in Grayson v. Nordic Constr. Co., Inc., 599 P.2d 1271, 1274 (Wash. 1979), the Washington Supreme Court held that a corporate officer was personally liable for a breach of contract claim because he had personally participated in deceptive and misleading acts that gave rise to the breach of contract.

There is no question that Ms. Chen personally undertook the acts giving rise to Gateway's loss. Ms. Chen admits that she used Dr. Ou's credit card to purchase tickets for her other customers without Dr. Ou's authorization. Chen Dep. 101, 102. Ms. Chen's deceptive practice has left Gateway uncompensated for the declined ticket charges. Such wrongful conduct justifies the imposition of personal liability on Ms. Chen.

For these reasons, the court grants Gateway's motion on its breach of contract claim. Ms. Chen and GEL are jointly liable in the amount of $175,757.50, including

ORDER – 11

prejudgment interest.

**C.     Gateway Is Not Entitled to Recover on its Unjust Enrichment Claim.**

Gateway also moves for summary judgment on its unjust enrichment claim. Gateway maintains that it has satisfied the three elements of an unjust enrichment claim: a benefit conferred by Gateway upon GEL and Ms. Chen; an appreciation or knowledge by GEL and Ms. Chen of the benefit; and the acceptance or retention by Ms. Chen and GEL of the benefit under such circumstances as to make it inequitable for GEL and Chen to retain the benefit.  See Bailie Comm., Ltd. v. Trend Bus. Sys.,Inc., 810 P.2d 12, 18 (Wash. Ct. App. 1991).  Under Washington law, however, a party to a valid contract is bound by the provisions of that contract, and may not disregard the same and bring quasi-contractual action.  See Chandler v. Wash. Toll Bridge Auth.,137 P.2d 97, 103 (Wash. 1943).  The court has affirmed the validity of an implied in fact contract. Gateway's claim is therefore rooted in breach of the agreement.  Gateway may not proceed against GEL and Ms. Chen by way of unjust enrichment.  Moreover, as Gateway's counsel acknowledged during oral argument, Gateway's seeks recovery under *either* contract or unjust enrichment; recovery under both theories would constitute duplicative damages.

The court dismisses Gateway's unjust enrichment claim.

**D.     The Doctrine of Economic Loss Precludes Gateway's Negligent Misrepresentation  Claim Against Ms. Chen.**

Gateway asserts that Ms. Chen negligently misrepresented that she was authorized to use Dr. Ou's credit card to purchase airline tickets, when, in fact, she was not.

Under the doctrine of economic loss, a plaintiff who suffers only pecuniary injury cannot recover in tort.  Instead, the claimant is limited to recovery under the law of contract.  See East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858,

ORDER – 12

870 (1986). The Washington Supreme Court describes the economic loss rule as marking "the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others." Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 881 P.2d 986, 989-90 (Wash. 1994). Particular damages may be remediable in tort as well as in contract, but if the damages fall on the contract side of the line and are more remediable in contract, tort recovery is precluded. Id. at 990.

Gateway seeks to recover purely pecuniary damages from Ms. Chen and GEL. Indeed, Gateway simply seeks to recover the benefit of its bargain, i.e. payment for wholesale airline tickets. The rule of economic loss limits Gateway's recovery to contractual remedies. The loss that Gateway seeks to recover is embodied in the terms of the contract; Defendants' "expected liability exposure" was to provide payment for the tickets. See Berschauer/Phillips, 881 P.2d at 986.

Consequently, the court denies Gateway's summary judgment motion on negligent misrepresentation and dismisses this claim as barred by the doctrine of economic loss.

**E.   Material Issues of Fact Related to Gateway's Fraud Claim Prevent the Court from Granting Summary Judgment.**

Defendants GEL and Ms. Chen move for summary judgment on Gateway's fraud claim.[3] To prove fraud at trial, Gateway must present clear, cogent, and convincing evidence of all elements of fraud. Stiley v. Block, 925 P.2d 194, 204 (Wash. 1996). The

---

[3] In contrast to negligent misrepresentation, the court is not aware of any Washington case to hold that the doctrine of economic loss bars a tort claim. Cf. Alejandre v. Bull, 98 P.3d 844, 851-52 (Wash. Ct. App. 2004) (Stating in dicta that "the prohibition against fraudulent conduct arises independently of the contract. A party to a contract cannot reasonably be held to a standard of negotiating for the possibility that the other party will deliberately misrepresent terms critical to the contract.").

ORDER – 13

elements of fraud are: (1) a representation of an existing fact, (2) materiality of the representation, (3) falsity of the representation, (4) knowledge of the falsity or reckless disregard as to its truth, (5) intent to induce reliance on the representation, (6) ignorance of the falsity, (7) reliance on the truth of the representation, (8) justifiable reliance, and (9) resulting damages. Farrell v. Score, 411 P.2d 146, 148 (Wash. 1966).

Material issues of fact preclude summary judgment on this claim. Gateway's fraud claim rests on the allegation that Ms. Chen falsely represented Dr. Ou's Citibank card as her own, which induced reliance by Gateway employee, Ms. Lin. Resolution of this claim would require the court to weigh the credibility of two witnesses. Ms. Lin testified that Ms. Chen repeatedly represented the Citibank card as her own; Ms. Chen claims that she disclosed that the card belonged to Dr. Ou. The testimony of Ms. Chen and Ms. Lin are in direct contradiction. Because the court cannot evaluate whether any misrepresentation occurred without making a credibility determination, the court declines to grant summary judgment on the fraud claim.

**F.  The Court Grants Summary Judgment on the Consumer Protection Act Claim.**

GEL and Chen move for summary judgment on Gateway's CPA claim for recovery of attorney's fees. To prevail in a private CPA action for attorneys' fees, a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation. See RCW § 19.86

GEL and Ms. Chen contend that Gateway cannot meet its burden to show that the acts complained of affect the public interest.

Where a transaction is essentially a private dispute, see, e.g., Short v. Demopolis, 691 P.2d 163 (Wash. 1984) (attorney-client); Salois v. Mutual of Omaha Ins. Co., 581

ORDER – 14

P.2d 1349 (Wash. 1978) (insurer-insured); McRae v. Bolstad, 676 P.2d 496 (Wash. 1984) (realtor-property purchaser), it is more difficult to show that the public has an interest in the subject matter of the alleged deceptive act.  Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest.  See Lightfoot v. MacDonald, 544 P.2d 88 (Wash. 1976).  If it is likely, however, that additional plaintiffs have been or will be injured in exactly the same fashion, a private dispute may be one that one that affects the public interest.  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 538 (Wash. 1986).  Factors indicating public interest in a private dispute include: (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?  Id.  In this case, the only factor present is that Ms. Chen's allegedly deceptive act occurred in the course of her business.

Gateway attempts to salvage its CPA claim by urging the court to construe the events as a consumer transaction, which is more likely than a private dispute to implicate the public interest.  Gateway contends that Ms. Chen's alleged deception is a consumer transaction because it affected other parties, including, two other airline wholesalers, Dr. Ou, the airlines, and had the potential to affect the travelers whose tickets were purchased with the Citibank card.  See Pls.' Opp'n at 7-10.

Consumer transactions generally involve sales of goods.  Hangman, 719 P.2d at 537.  In the instant case, Ms. Chen was *purchasing* wholesale goods – i.e. airline tickets – with a credit card that she was unauthorized to use. While her actions may have had the potential to affect her customers, Gateway offers no evidence that a single customer's airline ticket was in fact affected by Ms. Chen's conduct.  The facts of this case do not

ORDER – 15

implicate the public interest. Rather, Gateway's suit seeks to vindicate its rights in a private dispute. Ms. Chen's behavior cannot reasonably be expected to recur because she no longer has access to Dr. Ou's credit card.

While Gateway is correct in observing that the public interest impact is generally a question of fact, summary judgment is appropriate if no reasonable juror could find that Ms. Chen's actions implicate the public interest. This case involves the breach of a contract involving the sale of wholesale goods. No reasonable juror could conclude that it implicates the public interest. The court grants Ms. Chen and GEL's motion to dismiss Gateway's CPA claim for attorney's fees.

## IV. CONCLUSION

The court GRANTS Dr. Ou's motion (Dkt. # 35) and dismisses all claims against Dr. Ou. The court GRANTS in part and DENIES in part Gateway's motion for partial summary judgment (Dkt. # 37). The court GRANTS in part and DENIES in part the motion for partial summary judgment from GEL and Ms. Chen (Dkt. # 42).

In granting Gateway relief on its breach of contract claim, the court awards damages against GEL and Ms. Chen jointly in the amount of $175,757.50, including prejudgement interest at a rate of 12 percent per annum to run from June 23, 2005.

The court strikes the trial date and all pretrial deadlines. The court advises the parties to contact the clerk to schedule a status conference regarding any remaining claims.

Dated this 20th day of December, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 16